UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JUAN PABLO ORQUIZA, et al.,

    Plaintiffs,

v.

WALLDESIGN, INC., et al.,

    Defendants.

2:11-CV-1374 JCM (CWH)

**ORDER**

Presently before the court is defendants' Walldesign, Inc., Michael Bello, and Stephen Huntington's motion to dismiss plaintiffs' amended complaint and motion to strike paragraphs 10 and 11 thereof. Docs. #14 and #24.[1]  Plaintiffs have filed an opposition (doc. #42), to which defendants have replied (doc. #60).

Also before the court is plaintiffs' motion seeking leave to file a second amended complaint. Doc. #44. Defendants have filed a response (doc. #68), to which plaintiffs have replied (doc. #80).

**Factual Background**

This case arises from defendants' alleged intentional failure to pay wages, systematic under-reporting of hours, and failure to pay overtime for hours worked in excess of 40 hours in a week to plaintiffs and the class they represent.

---

[1] Defendant D.R. Horton, Inc. has joined in the motion and also filed what the clerk has determined to be a separate motion to strike as part of its reply in support of the motion to dismiss. *See* doc. #62.

**James C. Mahan**
**U.S. District Judge**

Plaintiffs and the class they represent are either current or former employees of Walldesign, Inc. While employed by defendants, plaintiffs completed construction-type jobs such as installing drywall, plastering, painting, and applying stucco. Plaintiffs worked at multiple construction sites in Nevada. (Doc. #44, Ex. 1). Plaintiffs allege that Walldesign is involved in irregular pay practices where employees are paid in cash instead of a check, and do not receive accurate paystubs. *Id*.

Furthermore, plaintiffs contend that their supervisors made false promises regarding rates of pay. Plaintiffs claim that when paychecks were received, the number of hours would not be included and, despite workers logging their own hours, they were denied the proper amount of pay. Defendants also often paid workers less than the established minimum wage (some making approximately $2/hour). *Id*. Plaintiffs also maintain that, despite regularly working more than 40 hours per week, they were denied overtime premium pay rates. *Id.*

Plaintiffs allege that Walldesign, Bello, and Huntington were alerted to the irregularities in pay practices in September 2009 when a different group of plaintiffs filed a similar law suit.[2] Walldesign is also accused of similar wrongs in California.[3]

On January 24, 2012, Walldesign filed a petition for emergency motions for order pursuant to chapter 11 of the Bankruptcy Act, and defendant Bello transferred Walldesign's workforce to Imperial Construction Group, Inc. (Doc. #44, Ex. E). Despite the change in workforce ownership, plaintiffs maintain that they are still subject to unfair pay practices which are not in accordance with local or federal wage laws. (Doc. #44).

Plaintiffs' amended complaint alleges: (1) failure to pay the federal minimum wage pursuant to 29 USC § 206; (2) failure to pay overtime pursuant to 29 USC § 207; (3) a class action to recover wages in accordance with N.R.S. § 608.250; (4) a class action to recover unpaid overtime pursuant to N.R.S. § 608.018; (5) action to recover waiting time penalties under N.R.S. § 608.040(1) and N.R.S. § 608.050; and (6) breach of contract/quasi-contract. (Doc. #9).

---

[2] Case No. A-09-598359-C, Clark County Superior Court; after removal: 2:09-cv-01869-RJC-LRL.

[3] Orange County Superior Court, Case No. 30-2010-00364818-CU-OE-CXC

**James C. Mahan**
**U.S. District Judge**

- 2 -

**Discussion**

1. Motion to Dismiss

   *(a)   Legal Standard*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id*. (internal quotations omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

. . .

. . .

1    (b)    *Analysis*

2        i.    Class Action Claims Under State Labor Law Are Compatible with FLSA

In their motion to dismiss, the defendants contend that there is an inherent conflict in attempting to pursue a collective action under 29 U.S.C.§ 216(b) while pursuing a parallel opt-out Rule 23 class claim in the same action. (Doc #14). Defendants argue that allowing both actions to continue would allow the plaintiffs to pursue the increased damages available under the FLSA while avoiding the limitations set by Congress when they passed the act. *Id.*

Plaintiffs reply that cases involving both FLSA and Rule 23 class actions are routinely litigated in district courts including this district. Plaintiffs cite to multiple cases litigated in this district where the courts have accepted opt-in/opt-out claims within the same lawsuits.[4] Further, plaintiffs contend that the Ninth Circuit has approved the use of "dual mechanisms" when district courts assert their right to exercise supplemental jurisdiction over state law claims. *See Wang v. Chinese Daily News*, 623 F.3d 1081, 1094 n.6. (9th Cir. 2011).

Defendants have cited to multiple district court cases to support the proposition that the FLSA's opt-in provisions necessarily conflict with the congressional intent underlying Rule 23's opt-out mechanisms. However, the majority of opinions in this district have allowed FLSA collective actions to co-exist alongside state law class actions.

For example, in a recent order addressing this precise issue, Judge Navarro endorsed hybrid FLSA/state law collection actions. *See Daprizio v. Harrah's Las Vegas, Inc.*, 2:10-cv-00604-GMN-RJJ, Dkt. #41 (Dec. 7, 2010). In *Daprizio*, Judge Navarro explained that in a case raising both FLSA and state law actions, the proper way to proceed is to allow a plaintiff to "attempt to certify two separate classes–one using the opt-in procedures of FLSA, while the other would utilize Rule 23's opt-out procedures." *Id.* By creating two separate classes, any procedural conflict is avoided. By allowing separate state law and FLSA class actions to progress, the court is able to prevent the Rule 23 procedures from conflicting with the fulfillment of the FLSA requirements.

---

[4] *See, e.g., Buenaventura v. Champion Drywall, Inc.*, No. 2:10-cv-00377-LDG (March 21, 2011); *Daprizio v. Harrah's Las Vegas, Inc.*, No. 2:10-cv-00604-GMN-RJJ (Dec. 7, 2010); *Rivera v. Peri & Sons Farms*, 3:11-cv-00118-RCJ-VPC (July 27, 2011).

James C. Mahan
U.S. District Judge

- 4 -

In the case at hand, it would behoove this court to follow the example set by Judge Navarro's decision and allow both state and federal collective action claims to continue. How the claims are separated into state or federal actions will be determined at a later date. Therefore, the defendants' motion for dismissal as to this claim is denied.

        ii.        Plaintiffs Have Alleged Sufficient Facts Against Bello and Huntington

Defendants argue that plaintiffs have failed to state a claim that the individual defendants (Michael Bello and Stephen Huntington) are plaintiffs' employers under the FLSA. (Doc. #14). According to the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d). Similarly, the Ninth Circuit has determined that "where an individual exercises control over the nature and structure of the employment relationship, or economic control over the relationship, that individual is within the meaning of the FLSA, and is therefore subject to liability." *Boucher v. Shaw*, 572 F.3d 1087 (9th Cir. July 27, 2009).

In this case, plaintiffs allege that "as an owner and officer of the company, Bello is considered a joint-employer within the meaning of FLSA. Bello oversaw the day-to-day operations at the company, he is the qualifying individual on Walldesign's contractor's licenses in Nevada, and pursuant to N.R.S. § 624.260, he is required to exercise regular control over the business and its employees. Further, plaintiffs contend that Bello was the owner, president, secretary, treasurer and director of Walldesign and therefore held a substantial ownership interest in the company. (Doc. #9, p.4-5). Because Bello makes both technical and administrative decisions, hires, superintends, promotes, fires, etc., he exercises direct and indirect control over his employees. (Doc. #9, p.7). Therefore, Bello is an "employer" under the expansive definition used in by the FLSA.

Similarly, plaintiffs argue that defendant Huntington was the vice-president of Walldesign and as such, he managed personnel policies and payroll practices. (Doc. #9, p.7). Further, Mr. Huntington allegedly oversees the field superintendents. Under *Iqbal*, "a court should assume the veracity of factual allegations. . . ." 556 U.S. at 675. Plaintiffs allege that if this court follows the premise set forth in *Iqbal*, then the complaint plausibly gives rise to an entitlement to relief.

James C. Mahan
U.S. District Judge

- 5 -

Plaintiffs have pled sufficient facts to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### iii. Plaintiffs Have Stated a Claim Against General Contractor Defendants

Defendants further argue that plaintiffs have failed to adequately state a claim against the general contractors as joint employers under the FLSA. (Doc. #14). Under the "economic reality" test used to determine whether two or more entities are "joint employees", the Ninth Circuit examines the following factors: (1) whether the putative employer had the power to hire and fire the worker; (2) whether the putative employer supervised and controlled work schedules or conditions of employment of the worker, (3) whether the putative employer determined the rate and method of payment of the worker; and (4) whether the putative employer maintained employment records of the worker. *See Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

Plaintiffs' complaint alleges sufficient facts to state a claim under *Bonnette's* 2nd and 4th "regulatory considerations". Plaintiffs assert that general contractor defendants oversaw the workers on the job sites (*Bonnette Factor 2)*. ( Doc. #9, p. 2). Furthermore, plaintiffs maintain that general contractor defendants established production schedules in order to monitor the completion of production goals (*Bonnette* factor 4). (Doc. #9, p.7-8).

According to *Iqbal*, plaintiffs must only allege sufficient facts to make the claim plausible on its face. 556 U.S. 662. Plaintiffs argue that the facts set forth in the amended complaint satisfy the majority of the factors governing employer-employee relationship under the FLSA as well as the *Bonnette* factors and that the remaining factors will be satisfied once access to records is granted.

Plaintiffs have met their pleading burden.

### iv. N.R.S. 608.150 Claim is Sufficiently Pled

Defendants argue that plaintiffs were employed by Walldesign and not the general contractor defendants. As such, defendants conclude that the general contractors are only potentially liable under N.R.S. § 608.150. (Doc. #14 at 6-7). Defendants argue that, in this case, plaintiffs have failed to provide sufficient facts to state a plausible claim for wages owed for work performed for general

James C. Mahan
U.S. District Judge

- 6 -

1  contractors. (Doc. #14 at 16:8-9). The liability of a general contractor is limited to the amount of
2  unpaid overtime or minimum wage which plaintiffs incurred while working on the particular general
3  cotnractor's project. *Artiaga v. Hutchins Drywall, Inc.*, 2007 U.S. Dist. LEXIS 55554, *12 (D. Nev.
4  July 27, 2007). Furthermore, the plaintiffs bear the burden of proof in establishing that they are
5  owed unpaid overtime or minimum wage. *Id.*

6      In this case, the defendants argue that the plaintiffs have failed to establish any of these facts.
7  Defendants state that, according to their interpretation of N.R.S. § 608.150, if a plaintiff has never
8  worked more than 40 hours per week for a general contractor or worked during a time when they
9  were not paid minimum wage, the general contractor cannot be liable. (Doc. #14 at 16:25-27).
10 Defendants allege that plaintiffs have not established or pled that *all* of their hours were worked in
11 a particular week on any particular general contractor's project. *Id*. (emphasis added). Furthermore,
12 defendants argue that the payment records attached as exhibits fail to itemize when and where
13 plaintiffs were working, so there is no way to definitively conclude whether any overtime was
14 accrued while working for a general contractor. (Doc. #14 at 18:9-10).

15     Given the fact that the plaintiffs specified which projects were associated with each general
16 contractor in the amended complaint, they have provided sufficient facts to satisfy the pleading
17 standard. Whether the general contractors are liable for the monies owed is a matter for the court to
18 answer at a later date. Accordingly, the motion to dismiss this claim is denied.

19           v.    State Law Class Claims Pursuant to Contract or Quasi-Contract and Wait-
20               Time Penalties Should Be Dismissed
21              *a.*    *Contract or Quasi-Contract*

22     Defendants contend that plaintiffs have asserted an "unsustainable class claim under quai-
23 contract." (Doc. #14, 19:11-12). Defendants point to the fact that plaintiffs Orquiza and
24 Buenaventura discussed rate of pay and payment issues with different supervisors. (Doc. #14 at
25 19:16-23). Defendants argue that based on the facts alleged in the amended complaint, it is clear that
26 "so called 'quasi-contract' claims cannot survive a Rule 23 class action."(Doc. #14 at 19:24-26).
27 Furthermore, with claims so varied, it would not be plausible, or even possible, for a sustainable
28

James C. Mahan
U.S. District Judge

- 7 -

class action suit. (Doc. #14 at 20:4-6).

In order for a court to depart from the normal Rule 23 interpretation, the action must be "capable of class-wide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. ___ (2011), 131 S. Ct. 2541, 180 L. Ed.2d 374. Based on the declarations provided by plaintiffs Orquiza and Buenaventura, it is apparent that any claim based on contract or quasi-contract would turn to the specific and individualized conversations between each class member and his or her supervisor. Such individualized determinations are not amenable to a class action suit.

        b.      *Waiting-Time Penalties*

Defendants argue that plaintiffs are not entitled to wait-time penalties pursuant to N.R.S. § 608.040 or § 608.050. (Doc. #14, 22:6-7). According to the most common interpretation of both N.R.S. § 608.040 and § 608.050, penalties apply only to the regular wages owed to an employee for the work performed between pay periods at the time employment ended. (Doc. #14 at 22:11-12).

The language of N.R.S. § 608.040 reads:

If an employer fails to pay:

    (a) within 3 days after the wages or compensation of a discharged employee becomes due; or

    (b) On the day the wages or compensation is due to an employee who resigns or quits,

the wages or compensation fo the employee continues at the same rate from the day he resigned, quit, or was discharged until paid or for 30 days, whichever is less.

NRS § 608.150 is similarly worded, but allows the continuation of regular wages to an employee who is not paid his or her regular wage when that wage becomes due after employment relationship terminates. Accordingly, the claim for waiting-time penalties is dismissed.

2.    <u>Motion to Strike</u>

Defendants move the court to strike paragraphs 10 and 11 of the amended complaint, arguing that the allegations contained therein are inflammatory, irrelevant, and inaccurate.

Paragraph 10 of the amended complaint states that "the actions of [defendants]...is willful" and that [defendants] had been alerted to "many irregularities" as early as September of 2009. (Doc.

#9 at 3:17-19). Paragraph 10 also introduces assertions that Walldesign has been accused of similar wrongdoings in California, but the company has yet to change its policies. (Doc. #9 at 3:19-20)

Paragraph 11 asserts that the illegal pay practices used by Walldesign are not unique to this company and that it is highly regular throughout the entire construction industry. (Doc. #9 at 3:22-23). Furthermore, paragraph 11 states that construction companies here in Las Vegas have been "regularly sued in recent years for unlawful pay practices" and cite to a myriad of cases from Nevada. (Doc. #9 at 4:1-2).[5]

*(a)  Legal Standard*

A court may grant a motion to strike if the contested language constitutes an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Scandalous" matter "improperly casts a derogatory light on someone, most typically on a party to the action." 5A Charles Alan Wright & Arthur R. Miller § 1382, at 712; *see also* 2 Moore's Federal Practice § 12.37[3] at 12-97 ("'Scandalous' generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court."). Matter which is "immaterial" is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517, 114 S.Ct. 1023 (1994) (citing 5A Charles Alan Wright & Arthur R. Miller § 1382, at 706–07) (internal citations omitted).

Federal courts generally disfavor motions to strike. *Colaprico v. Sun Microsystems, Inc.*, 758 F.Supp. 1335, 1339 (N.D. Cal. 1991) ("[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation.") (citing sources); *United States v. 729.773 Acres of Land, More or Less, Situate in City and County of Honolulu*, 531 F.Supp. 967, 971 (D. Haw. 1982) ("A motion to strike is a severe measure and it is generally viewed with disfavor."); *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1478 (C.D. Cal.1996)

---

[5] *See*, e.g., *Lemus v. Burnham Painting and Drywall*, 2:06-cv-1158-RCJ-PAL; *Arteaga v. Hutchins Drywall, Inc.*, 2:06-cv-1177-KJD-LRL; *Lopez v. Pete King Nevada*, 2:06-cv-1200-KDJ-LRL; *Torralba v. Walldesign, Inc.*, *Ruiz v. All-American,* 2:10-cv-1312-GMN-GWF, *Lagos v. Monster Painting, Inc.,* 2:11-cv-331-LRH-GWF.

James C. Mahan
U.S. District Judge

- 9 -

1  ( "[M]otions are generally disfavored because they are often used as delaying tactics, and because
2  of the limited importance of pleadings in federal practice.") (cites and quotes omitted).

   *(b)    Analysis*

Defendants argue that plaintiffs' attempt to include citations to other cases in which the defendants were accused of similar wrongdoings is misleading and irresponsible. Defendants also argue that the plaintiffs make frivolous accusations against the entire construction industry in an "effort to prejudice the trier of fact against all construction entities." (Doc. #14). Defendants believe that including these inflammatory statements will suggest that because defendants are members of the construction community, they must have committed the wrongs alleged by plaintiffs.

Plaintiffs maintain that the information contained in paragraphs 10 and 11 are highly relevant in that they illustrate how Walldesign has faced similar allegations in the past. Plaintiffs assert that this fact speaks directly to the willfulness of Defendants' violations which is a key allegation to the Plaintiffs' prayer for the three year statute of limitations under the FLSA.

Similarly, plaintiffs contend that paragraph 11 is paramount in explaining the wider context of FLSA issues in the construction industry. Plaintiffs argue that because of rules set forth in *Iqbal and Twombly*, which require a statement of claims that is "plausible on its face" and raise the right to relief "above the speculative level", it would be irresponsible of them to not include information that helps establish the plausibility of their claim.

Given the fact that the material included in paragraphs 10 and 11 are relevant to the subject matter in the claims to be litigated, striking them would imprudent. Therefore, the motion to strike paragraphs 10 and 11 is denied.

3.    Motion to File Second Amended Complaint

   *(a)    Legal Standard*

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires." The Supreme Court has interpreted Rule 15(a) and confirmed the liberal standard district courts must apply when granting such leave. In *Foman v. Davis*, 371 U.S. 178 (1962), the Court explained: "In the absence of any apparent or declared reason – such as undue

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by
2  amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the
3  amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be 'freely
4  given.'" *Id.* at 182. In addition to the Rule 15(a) requirements, the local rules of federal practice in
5  the District of Nevada require that a plaintiff submit a proposed, amended complaint along with a
6  motion to amend. LR 15-1(a).

7  Given the "extreme liberality" of the policy that favors amendments, and plaintiffs'
8  compliance with the local rules, plaintiffs' motion to file a second amended complaint is granted.
9  *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (1987).

10  Accordingly,

11  IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to
12  dismiss (doc. #14) be, and the same hereby is, GRANTED in part and DENIED in part.

13  IT IS FURTHER ORDERED ADJUDGED, AND DECREED that defendants' motions to
14  strike (docs. #24 and #62) be, and the same hereby are, DENIED.

15  IT IS FURTHER ORDERED ADJUDGED, AND DECREED that plaintiffs' motion to file
16  a second amended complaint (doc. #44) be, and the same hereby is, GRANTED.

17  IT IS THEREFORE ORDERED that the proposed amended complaint attached to plaintiffs'
18  motion to amend (Doc. #44-1) be filed forthwith.

19  DATED June 19, 2012.

_____
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**

- 11 -